[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is a martial dissolution action brought in November of 1998 by Carl E. Martin, age 56, a high school graduate and 16-year army veteran. The defendant, Catherine A. Martin, is 43 and has completed two years of college. Both parties have appeared by counsel. After a special masters' pretrial on February 16, 2000, the case was heard by the court on May 4, 2000.
Based on the evidence, the court makes the following findings:
The plaintiff and the defendant, whose maiden name is D'Elia, were intermarried on December 18, 1975 in Belton, Texas;
The plaintiff has resided in Connecticut for at least one year prior to the filing of the complaint;
The parties have two adult children born of their marriage; the defendant has not given birth to any other children since the date of the marriage; CT Page 6923
Neither of the parties nor the children have received assistance from the State of Connecticut or from any of its towns or municipalities.
The parties met in Texas when the plaintiff, an army sergeant, was stationed there. They married and went to Germany when he was assigned there. He decided to leave the military after this tour of duty and they moved to Tucson, Arizona where he attended technical school and became an auto mechanic and then an installer at a Lear jet factory. The defendant was a homemaker, raising two sons, and working regularly.
In 1981, the plaintiff accepted a position as a civilian advisor to the military in Saudi Arabia and lived there for about one year. Upon his return, he joined his wife and children in Norwich, Connecticut where she had relocated in his absence to be close to her family. He went to work at Electric Boat in Groton as an outside machinist. She began work for the State of Connecticut at the Norwich Hospital. She continues to work for the state at Connecticut Valley Hospital in Middletown where she is a processing technician arranging benefits for patients about to be released. She earns about $40,000 annually.
The plaintiff's employment at Electric Boat was interrupted by two work injuries resulting in damage to his knees and back. He received workers' compensation benefits of about $130,000. Some $40,500 remains in investment accounts in his name only at this time.
In 1990 he sought and obtained a social security disability rating because of a post traumatic stress disorder relating to his military service in Vietnam. He receives about $900 monthly. This is his only regular source of income since he has been virtually unemployed since his work accidents.
The parties removed from Norwich to Plainfield several years ago. They jointly own a raised ranch home on Roper Road. They agree its value is $80,000. The mortgage is about $67,000.
The parties have experienced serious marital difficulties for more than twenty years. Their son, Thomas, testified that from age five and throughout his childhood his father would strike and choke his mother. He recalls being kicked, slapped and stabbed with a screwdriver by his father. His mother worked more regularly than his father, he said, and ran the home.
The plaintiff testified that the defendant has had a series of extramarital affairs during the marriage. In her testimony the defendant did not deny these allegations. On one occasion in 1995, he received CT Page 6924 medical treatment for a sexually transmitted disease passed on to him by the defendant. She did not deny' this allegation in her testimony. She did however testify that the plaintiff's abuse of her began early in the marriage and further that the plaintiff was not a good father and had a sporadic work history.
The parties separated in November of 1998. The defendant left the residence in Plainfield and has resided in various hotels and apartments since then. Her credit card debt has increased since the separation. The defendant has also incurred a cell phone bill of some $1300 since the separation. She is overwhelmed by expenses of living independently and paying existing debt. In September of 1999, she was ordered to pay $100 weekly to the plaintiff as alimony, pendente lite. She has made only one payment and is currently about $2700 in arrears. Some of her financial difficulties appear self-induced. For reasons never explained, she pays for insurance covering five family motor vehicles. The plaintiff is also in financial difficulty, but his checkbook balance remains positive because of transfers from his investment accounts as his needs arise.
After hearing the testimony, the court concludes the marriage of the parties has broken down irretrievably. Yet it is difficult to allocate greater fault to one side rather than the other in view of their respective misconduct. Accordingly, the court, being mindful of the provisions of Chapter 15j of the General Statutes, particularly §§46b-81, 46b-82, 46b-83, and 46b-87, and relevant case law, finds the following orders to be fair and equitable:
1. The marriage of the parties is dissolved on the ground of irretrievable breakdown.
2. By way of property settlement, the defendant shall quit-claim her one-half interest in the premises known as 15 Roper Road, Plainfield, Connecticut to the plaintiff. He shall pay the first mortgage, taxes and insurance on the premises and save the defendant harmless therefrom. The parties shall list for sale their timeshare in Williamsburg, Virginia and share the net proceeds therefrom. The listing price and any reductions thereto shall be made by the parties in accordance with the listing agent's recommendations.
3. The defendant is ordered to pay alimony to the plaintiff in the amount of $50 weekly until he remarries, dies or cohabits as defined under General Statutes § 46b-86 (b), whichever occurs first. Further, the pendente lite alimony arrearage in the amount of $2700 is ordered to be paid at the rate of $5 weekly for a total weekly payment of $55. This order is to be secured by an immediate wage garnishment. CT Page 6925
4. The defendant shall have ownership of the Ford Probe and she shall pay the balance of the home equity loan, secured by a second mortgage or. the residence and save the plaintiff harmless therefrom. The plaintiff shall have the ownership of the Ford Bronco. Each party shall sign the paperwork necessary to carry out these orders.
5. The hot tub shall be sold and the proceeds used to pay the loan for it. The defendant's doll collection shall be returned to her.
6. The defendant shall continue the automobile insurance on the Ford Bronco for a period of thirty days from the date of judgment.
7. The plaintiff shall notify the defendant's employer of the entry of this judgment as provided by law.
8. Each party shall be responsible for those debts shown on their respective financial affidavits except that the defendant shall be solely responsible for the cell phone debt due SNET in the approximate amount of $1350.
9. Each party shall keep for their own use their defined benefit pension plans.
10. Each party shall keep whatever assets they have in their own name not specifically mentioned herein including, but not limited to, bank accounts, investments and personal property.
11. No award of attorneys' fees is entered.
12. In the event the defendant files for bankruptcy relief, the alimony obligations found in paragraph 3 herein shall be nondischargeable (as provided by law) since they represent support obligations.
13. The court will retain jurisdiction to enter such orders as may be necessary to effectuate the provisions of the judgment.
14. The plaintiff shall prepare the judgment file.
Potter, J.